SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
Counsel for Plaintiffs

JOSEPH S. GILBERT, ESQ.
Nevada Bar No.: 9033
ROGER O'DONNELL, ESQ.
Nevada Bar No.: 14593
JOEY GILBERT LAW
201 W. Liberty Street, Suite 210
Reno, Nevada 89501
Tel: (775) 284-7000
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
Co-Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CAPELLI MILANO, LLC, a Nevada Limited Liability Company, GV ENTERPRISE LLC, a Nevada Limited Liability Company ABUZZ II LLC, a Nevada Limited Liability Company, DARRELEEN GOODMAN, an individual, KEITH MATTHEWS, an individual BRUCE FONG D.O, HMD, an individual, ROBISON TACTICAL-FAITH FAMILY, FIREARMS, A Nevada Business, ,.On behalf of themselves and all similarly situated persons

        Plaintiffs,

        vs.

THE HONORABLE STEPHEN F. SISOLAK, in his official capacity as Governor of the State of Nevada, AARON DARNELL FORD, in his official capacity as the Attorney General of the State of Nevada, MARILYN KIRKPATRICK, in her official capacity as Urban County Lead of the Local Empowerment Advisory Panel, J.J.

**Case No.: 20-cv-00827**

**CIVIL RIGHTS CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE AND DECLARATORY RELIEF**

**JURY TRIAL DEMANDED**

GOICOECHEA, in his official capacity as Rural County )
Lead of the Local Empowerment Advisory Panel, )
SHADABA ASAD, M.D., in her official capacity as a )
Member of the State of Nevada Medical Advisory Team; )
IHSAN AZZAM, Ph.D., M.D., in his official capacity as )
Nevada State Chief Medical Officer; NEVADA DEPT. )
OF HEALTH & HUMAN SERVICES, a Nevada )
Administrative Agency; JUSTIN LUNA, in his official )
capacity as Chief of the Nevada Division of Emergency )
Management;  NEVADA DEPT. OF PUBLIC SAFETY, )
DIVISION OF EMERGENCY MANAGEMENT, a )
Nevada Administrative Agency; NEVADA STATE )
BOARD OF PHARMACY, a Nevada public body; )
DAVID J. WUEST, in his official capacity as Executive )
Secretary of the State Board of Pharmacy; NEVADA )
DEPARTMENT OF EMPLOYMENT, TRAINING & )
REHABILITATION, a Nevada Administrative Agency, )
DOES 1 through 100. )
      Defendants. )
)
)
)
_____ )

## FIRST AMENDED COMPLAINT

   COME NOW, Plaintiffs, who bring this action on behalf of themselves and on behalf of all similarly situated persons (collectively "PLAINTIFFS") by and through the undersigned attorneys of record, SIGAL CHATTAH, ESQ., of the CHATTAH LAW GROUP, and JOSEPH S. GILBERT, ESQ., of JOEY GILBERT LAW, who hereby complain of Defendants and each of them and allege as follows:

## PARTIES

**A. The Plaintiffs**

   1.  Plaintiff, GV ENTERPRISE LLC. at all relevant times, is and was a Nevada Limited Liability Company, organized and authorized to do business and doing business in the State of Nevada. Located in Las Vegas, Nevada (Clark County), is in the food

and beverage industry and employed Nevada residents as employees, all of whom have all been laid off since Governor Sisolak's instituted the "shut-down" orders, despite the fact that GV ENTERPRISE, LLC. could have safely operated their business within the CDC's recommended social distancing guidelines.

2.      Plaintiff CAPELLI MILANO, LLC, at all relevant times, is and was a Nevada Limited Liability Company organized and authorized to do business and is doing business in the State of Nevada. Located in Las Vegas, Nevada (Clark County), is a hair salon business that employed Nevada residents as employees, all of whom have all been laid off since Governor Sisolak's instituted the "shut-down" orders, despite the fact that could have safely operated their business within the CDC's recommended social distancing guidelines.

3.      Plaintiff DARRELEEN GOODMAN, at all relevant times, is and was a Nevada individual residing in the State of Nevada.  Located in Reno, Nevada (Washoe County), Darreleen Goodman is a Barber that was continuously been working and has since been laid off since Defendant Governor Sisolak instituted the "shut down" orders, despite the fact that Darreleen Goodman could have safely operated and worked within the CDC's recommended social distancing guidelines.

4.      Plaintiff BRUCE FONG, DO, HMD, at all relevant times, is and was a Nevada individual residing in the State of Nevada.  Located in Reno, Nevada (Washoe County), Bruce Fong, DO, HMD is an osteopathic medical physician with a valid medical license issued by the State of Nevada, who has been prevented from providing approved treatment to his patients since Defendant Governor Sisolak approved the March 23, 2020 emergency regulation prohibiting the prescription, issuance, filling, and dispensing of chloroquine and/or hydroxychloroquine to outpatients testing positive for COVID-19.

5.      Plaintiff KEITH MATTHEWS, at all relevant times, is and was a Nevada individual residing in the State of Nevada.  Located in Reno, Nevada. Matthews is a patient who tested positive for COVID-19 and who has been prevented from receiving approved treatment since Defendant Governor Sisolak approved the March 23, 2020 emergency regulation prohibiting the prescription, issuance, filling, and dispensing of chloroquine and/or hydroxychloroquine to outpatients testing positive for COVID-19.

6.      Plaintiff ABUZZ II LLC, at all relevant times, is and was a Nevada Limited Liability Company organized and authorized to do business and is doing business in the State of Nevada. Located in Las Vegas, Nevada (Clark County), is a hair salon business that employed Nevada residents as employees, all of whom have all been laid off since Governor Sisolak's instituted the "shut-down" orders, despite the fact that could have safely operated their business within the CDC's recommended social distancing guidelines.

7.      Plaintiff ROBISON TACTICAL- FAITH FAMILY FACTORS, at all relevant times, is and was a Nevada business organized and authorized to do business and is doing business in the State of Nevada. Located in Las Vegas, Nevada (Clark County), is a defense business that employed Nevada residents as employees, all of whom have all been laid off since Governor Sisolak's instituted the "shut-down" orders, despite the fact that could have safely operated their business within the CDC's recommended social distancing guidelines.

**B.      Defendants**

1.      Defendant HONORABLE STEPHEN F. SISOLAK, was and is at all times relevant herein the Governor of the STATE OF NEVADA.

2.      Defendant AARON DARNELL FORD, was and is at all times relevant herein the Attorney General for the STATE OF NEVADA.

4

3.     Defendant MARILYN KIRKPATRICK, was and is at all times relevant herein Urban County Lead of the Local Empowerment Advisory Panel, relegated by Defendant Governor Sisolak during the COVID-19 period and acting on his behalf.

4.     Defendant J.J. GOICOECHEA, was and is at all times relevant herein Rural County Lead of the Local Empowerment Advisory Panel, relegated by Defendant Governor Sisolak during the COVID-19 period and acting on his behalf.

5.     Defendant SHADABA ASAD, M.D., was and is at all times relevant herein a Member of the State of Nevada Medical Advisory Team, relegated by Defendant Governor Sisolak during the COVID-19 period and acting on his behalf.

6.     Defendant IHSAN AZZAM, Ph.D., M.D., was and is at all times relevant herein the Chief Medical Examiner for the STATE OF NEVADA, relegated by Defendant Governor Sisolak during the COVID-19 period and acting on his behalf.

7.     Defendant, NEVADA DEPARTMENT OF HEALTH & HUMAN SERVICES, was and is at all times relevant herein an Administrative Agency operating in the STATE OF NEVADA, acting with and at the direction of Defendant Governor Sisolak.

8.     Defendant, JUSTIN LUNA, was and is at all times relevant herein Chief of the NEVADA DIVISION OF EMERGENCY MANAGEMENT, acting in said capacity and simultaneously with Defendant Governor Sisolak, issued Orders and Emergency Directives under NRS 414 et. seq.

9.     Defendant, NEVADA DEPARTMENT OF PUBLIC SAFETY, DIVISION OF EMERGENCY MANAGEMENT, was and is at all times relevant herein an Administrative Agency operating in the STATE OF NEVADA, acting with and at the direction of Defendant Governor Sisolak.

10.     Defendant, NEVADA STATE BOARD OF PHARMACY, was and is at all times relevant herein, a public body operating in the STATE OF NEVADA, acting in with and at the direction of Defendant Governor Sisolak.

11.     Defendant, DAVID J. WUEST, was and is at all times relevant herein the Executive Secretary of the State Board of Pharmacy, acting in said capacity simultaneously with and at the direction of Defendant Governor Sisolak.

12.     Defendant, NEVADA DEPARTMENT OF EMPLOYMENT, TRAINING & REHABILITATION, was and is at all times an Administrative Agency operating in the STATE OF NEVADA, acting with and at the direction of Defendant Governor Sisolak.

13.     At all times pertinent herein, Defendants were agents, servants, employees, or joint venturers of every other Defendant, and at all times mentioned herein were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants. Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.

14.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referred to.  As such, Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities of said Defendant as they become identified.

**NATURE OF ACTION AND JURSIDICTION**

15.     This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive

relief against Defendants for committing acts, under color of law, with the intent and for the

purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the

United States; retaliating against Plaintiffs; and for refusing or neglecting to prevent such

deprivations and denials to Plaintiffs.

16.     This action arises under 42 U.S.C. § 1983 in relation to Defendants'

deprivation of Plaintiffs' Constitutional rights to Due Process and Equal Protection under

the Fifth and Fourteenth Amendments to the U.S. Constitution.  Accordingly, this Court has

Federal Question Jurisdiction under 28 U.S.C. §§ 1331 and 1343.  This Court has authority

to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive

relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42

U.S.C. § 1988.  Plaintiffs, therefore, on behalf of themselves and all others similarly

situated, seek damages and declaratory and injunctive relief accordingly.

17.     The U.S. District Court for the District of Nevada is the appropriate venue for

this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which

Defendants either maintain offices or do substantial official government work in, exercise

their authority in their official capacities, and will continue to enforce the Orders and

Emergency Directives; and it is the District in which substantially all of the events giving

rise to the claims occurred.

18.     This Court has supplemental jurisdiction over Plaintiffs' State law claims

pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy

described by Plaintiffs' Federal claims.

**INTRODUCTION**

19.     In the wake of the novel coronavirus ("COVID-19"), the State of Nevada Executive Administrators and their Agencies hastily instituted a series of State and County-wide orders and emergency directives (the "Orders and Emergency Directives") in an effort to stem the spread of COVID-19.  As well-intentioned as these Orders and Emergency Directives are with respect to the general public's health, safety and welfare, they have come at a steep price with respect to the complete and utter restraint on Nevadans' civil rights and liberties.

20.     This class action challenges the constitutionality of Defendants' Orders and Emergency Directives to curb Plaintiffs' civil rights and liberties by ordering draconian "shelter-in-place" orders, effectively shuttering so-called "Non-Essential Businesses" all across the State of Nevada, and restricting the practice of medicine by Nevada physicians and the ability of patients to receive treatment for COVID-19.

21.     If allowed to stand, Defendants' Orders and Emergency Directives will not only continue to violate Plaintiffs' rights under both the Nevada and U.S. Constitutions, but Defendants will continue to inflict massive and widespread economic damage to Plaintiffs – all while unconstitutionally placing the burden of Defendants' respective Orders and Emergency Directives on the backs of both small and large "Non-Essential Businesses", such as those of Plaintiffs, who have already been financially crippled, forced to shut their doors for business and to conduct mass layoffs, in addition to prohibiting the treatment of patients testing positive for COVID-19 by licensed Nevada physicians.

22.     Indeed, as a result of Defendants' wanton and unlawful Orders and Emergency Directives, many of these Plaintiffs' "Non-Essential Businesses" might never financially recover and may end up closing their doors forever.  Further,

Defendants' grossly negligent restriction of drugs approved by the FDA for use in the treatment of COVID-19 is both unlawful and unconscionable, and puts Nevadans at risk of irreversible illness and even possible death.  The stakes for immediate relief from this Court for Plaintiffs could not be higher.

23.    Accordingly, Plaintiffs bring this class action challenging the Constitutionality of Defendants' Orders and Emergency Directives, which have deprived them of numerous rights and liberties under both the U.S. and Nevada Constitutions.

24.    In doing so, Plaintiffs seek: (1) equitable and injunctive relief to enjoin the enforcement of Defendants' Orders and Emergency Directives; (2) declaratory relief from this Court in declaring that Defendants' Orders and Emergency Directives violate Plaintiff's civil rights under: (a) 42 U.S.C. § 1983 of the Federal Civil Rights Act ("§ 1983"), (b) the Due Process and (c) Equal Protection Clauses of the Fifth and Fourteenth Amendments, and (d) Article 1 and 5 of the Nevada Constitution; (3) attorney's fees and costs for the work done by Plaintiffs' counsel in connection with this lawsuit in an amount according to proof; and (4) for such other and further relief as the Court deems just and appropriate.

## CLASS ALLEGATIONS

25.    The treatment to which Plaintiffs, and the class they represent, have and will be subjected, specifically— the arbitrary closure of "Non-Essential Businesses", the arbitrary closure of religious institutions and places of worship, the violation of NRS 414.155, the arbitrary restriction of drugs approved by the FDA for use in the treatment of COVID-19, the violation of NRS 441A.200, the violation of Plaintiffs' First, Second, Fourth, Fifth and Eighth Amendment Constitutional rights – were all performed pursuant to the policies, customs, and/or practices of Defendants.

26.     Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an order declaring that Defendants' treatment of Plaintiffs pursuant to these policies, customs, and/or practices is unlawful.

27.     Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3).  Plaintiffs seek certification of a class defined as follows:

a.     All persons who were forced to close "Non-Essential Businesses" were unable to receive unemployment benefits through the Department of Employment, Training & Rehabilitation ("DETR");

b.     All persons who were deprived of their Constitutional rights under NRS 414.155;

c.     All persons who were deprived of their Constitutional and Statutory rights under NRS 441A.200 and as described in *Roe v. Wade* (1973); and

d.     All persons affected by the wanton and reckless disregard of Defendants' conduct to the detriment of the residents of the State of Nevada.

28.     Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical.  Plaintiffs do not know the exact number of class members.  Plaintiffs are informed and believe, and thereupon allege that there are more than 100,000 persons in the class defined above.

29.     Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are questions of law and fact common to the class, including but not limited to:

a.     Whether the grossly negligent closure of businesses deemed "Non-Essential Businesses" under Chapter 414 of the Nevada Annotated Code for a

10

prolonged period of eight weeks was arbitrary and capricious action taken by

Defendant Governor Sisolak and the Defendants named above;

   b.  Whether the emergency regulation prohibiting the prescription and

issuance, filling, and dispensing of chloroquine or hydroxychloroquine for

outpatients testing positive for COVID-19 was arbitrary and capricious action and

willful misconduct on behalf of Defendant Governor Sisolak, Defendant Wuest,

and Defendant State Board of Pharmacy ("BOP");

   c.  Whether the Emergency Directives closing Nevada School Systems

was grossly negligent taking into account that termination of the 2020 school year

for the State of Nevada was arbitrary and capricious and not supported by

substantial evidence or justification of same;

   d.  Whether Defendants' bad faith and willful misconduct harmed the

Plaintiff class and chilled their Freedom of Speech and Association and Free

Exercise of Religion in violation of the First Amendment;

   e.  Whether Defendants engaged in gross negligence, willful misconduct,

and bad faith and are liable for violating the First, Second, Fourth, and Fourteenth

Amendment rights of the Plaintiff class; and

   f.  Whether Defendants should be enjoined from engaging in this gross

negligence and willful misconduct which has been detrimental to the State of

Nevada and its residents.

  30.  Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs' claims are typical

of the class they seek to represent.  Plaintiffs and the class they seek to represent were all

subjected to violations of their Constitutional rights over the course of the past eight weeks

in the State of Nevada.

31.     Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class.  Each proposed class member suffered actual damages as a result of the challenged conduct.

32.     Plaintiffs' claims arose because of Defendants' policies, customs, and/or practices.  Plaintiffs' claims are based upon the same legal theories as the claims of the proposed class members.

33.     Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this action against Defendants.  Counsel knows of no conflicts among any members of the class, or between counsel and any members of the class.

34.     Pursuant to Federal Rule of Evidence 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

35.     If this action is certified as a class action, Plaintiffs contemplate that individual notice will be given to class members, at such last known address by first class mail, as well as notice by publication informing them of the following:

     a.     The pendency of the class action and the issues common to the class;

     b.     The nature of the action;

     c.     The right to "opt-out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

     d.     Their right to "opt-out" to be represented by their own counsel and to enter an appearance in the case, otherwise they will be represented by the named class Plaintiffs and their counsel; and

e.      Their right, if they do not "opt-out", to share in any recovery in favor of

the class, and conversely, to be bound by any judgment on the common issues

adverse to the class.

## FACTS AND CIRCUMSTANCES SURROUNDING ALL CLAIMS

36.      The global COVID-19 pandemic brought on by an infectious and

communicable disease caused by the recently discovered coronavirus, has caused

catastrophic and unprecedented economic damage across the globe, and with it, significant

loss of life and fundamental changes to both world and national economies, and specifically,

the manner in which businesses are permitted to run, if at all.

37.      To be sure, State and U.S. officials have faced tremendous adversity in

planning, coordinating, and at times executing effective nationwide and statewide policies to

protect the general public's health, safety and welfare during this time of crisis.

38.      However, these policies, as well-intentioned as they may be, have had an

unlawful and disparate effect on some people, their health and their businesses over other

people and their health and their businesses, to the point where life, liberty and the pursuit of

happiness have been ripped away from law-abiding citizens and businesses.

39.      On or about March 13, 2020, President of the United States ("POTUS")

Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the

emergence of COVID-19.

40.      On March 16, 2020, POTUS announced "*15 Days to Slow the Spread* " –

Coronavirus Guidelines for America based on the Center for Disease Control ("CDC")

recommendations.

41.      Though a Federal Mandate was not issued, these guidelines and

recommendations for the general public and State Agencies were made based on COVID-19

projections established by the CDC and the Institute of Health Metrics and Evaluation ("IHME").

42.     Over the course of the subsequent thirty days, it became noticeably clear that these projections were grossly over-exaggerated and correlating restrictions were unnecessary.

43.     Specifically, since the initial outbreak in February and March of 2020, the Federal Government's projections of anticipated U.S. deaths related to the virus have decreased substantially, by an order of magnitude.  Yet, despite such revisions, Defendants have continued to increasingly restrict—and in some cases have even outright banned— Plaintiffs' engagement in constitutionally-protected activities.

44.     On February 04, 2020, Defendant Governor Sisolak issued Executive Order 2020-01, finding that "[d]ocuments, records, or other items of information which may reveal the details of a specific emergency plan or other tactical operations by a response agency… are hereby deemed confidential and not subject to subpoena or discovery, and not subject to inspection by the general public…," to include "[h]andbooks, manuals, or other forms of information detailing procedures to be followed by response agencies in the event of an… emergency…" ("Executive Order 2020-01").  Such an Order seeks to prevent accountability of the Defendants' actions over the days that would follow.

45.     On March 12, 2020, Defendant Governor Sisolak activated the State Emergency Operations Center, in an effort to coordinate a response and minimize the impact and further transmission of COVID-19 to persons in Nevada, and such declaration was made to remain in effect until the end of the COVID-19 emergency ("Emergency Declaration").

14

46.     Chapter 414 of the Nevada Revised Statutes, entitled *Emergency Management,* delineates the Executive Authority that Defendant Governor Sisolak enjoys, and albeit broadly extends certain powers to the Governor, it does not allow for arbitrary and capricious actions, willful misconduct or grossly negligent conduct taken against the State, or against the residents of Nevada.

47.     Accordingly, Defendant Governor Sisolak and other named Defendants engaged in actions that were arbitrary and capricious, grossly negligent, willful misconduct and in bad faith, in the execution and enforcement of those powers delineated in Chapter 414 of the Nevada Revised Statutes, as stated *infra*.

48.     NRS 414.110 specifically precludes immunity for such actions that are based on willful misconduct, gross negligence, or bad faith.

49.     It has become exceedingly clear that Defendant Governor Sisolak and associated Defendants named herein have engaged in gross negligence, bad faith and willful misconduct by issuing Orders and Emergency Directives that are arbitrary and capricious, and not supported by substantial evidence to merit same.

50.     On March 15, 2020, Defendant Governor Sisolak closed all schools, effective March 16, stating that schools may not reopen earlier than April 6 ("Emergency Directive 001"). On April 21, 2020, Defendant Governor Sisolak declared that schools in Nevada were dismissed for the remaining 2020 school year.

51.     On March 18, 2020, Defendant Governor Sisolak closed all gaming establishments and gaming activity, and such declaration was made to remain in effect until April 16 ("Emergency Directive 002").

*__Unemployment Allegations.__*

52.     Following Defendant Governor Sisolak's aforementioned Orders and Emergency Directives, Defendant DETR received 347,978 new claims for unemployment benefits.  Defendant DETR is the only administrative office in the State of Nevada that handles state unemployment benefits.

53.     As part of the Orders and Emergency Directives, Defendant Governor Sisolak instructed Defendant DETR to waive verification periods, to serve as an immediate disbursement of unemployment benefits to the over 300,000 unemployed individuals living in Nevada.

54.     As of the date of filing of this Complaint, there are over 100,000 individuals who have not received any unemployment relief through the grossly-mismanaged Defendant DETR agency, since the beginning of the COVID-19 pandemic.

55.     Defendant Governor Sisolak grossly neglected to ensure that Nevadans have financial benefits to sustain the arbitrary and capricious closures of Nevada businesses, leaving them financially devastated and hungry, and robbing them of their dignity.

56.     The failure of Defendant DETR to adequately function during this time of crisis, despite the available financial resources, demonstrates the grossly negligent and inadequate manner that Defendants have endeavored to secure Nevada's residents' interests during this crisis.

*__"Essential Businesses" vs. "Non-Essential Businesses__*

57.     On March 20, 2020, Defendant Governor Sisolak, in joint action with Defendant Department of Public Safety, Division of Emergency Management, adopted an emergency regulation amending Chapter 414 of the Nevada Administrative Code to define "Essential Businesses" and "Non-Essential Businesses", whereby "Non-Essential

Businesses" were to cease operations until April 16, and where "Essential Businesses" were authorized to remain open so long as strict guidelines were followed to reduce the likelihood of transmitting COVID-19.  Specifically, adequate social distancing, contactless payments when possible, and delivery only for retail cannabis dispensaries ("Emergency Directive 003").

58.     NRS 233B.066(2) mandates that each adopted regulation be accompanied by: (i) a clear and concise explanation of the need a for the adopted regulation; (ii) the estimated economic effect of the regulation on the business which it is to regulate and on the public, which shall be stated separately, and in each case must include: (1) both adverse and beneficial effects; and (2) both immediate and long term effects; (iii) the estimated cost to the agency for enforcement of the proposed regulation; (iv) a description of any regulations of other state or government agencies which the proposed regulation overlaps or duplicates, a statement explaining why the duplication or overlapping is necessary, and if the regulation duplicates or overlaps a federal regulation, the name of the regulating federal agency; (v) if the regulation includes provisions which are more stringent than a federal regulation which regulates the same activity, a summary of such provisions; and (vi) if the regulation provides a new fee or increases an existing fee, the total annual amount the agency expects to collect and the manner in which the money will be used.  *See* NRS 233B.066.

59.     Both Defendants Governor Sisolak and Luna endorsed the March 20, 2020 emergency regulation amending Chapter 414 of Nevada Administrative Code, and in its accompanying Informational Statement as required by NRS 233B.066(2), affirmed that: (i) there was no economic effect of the regulation on the businesses which it is to regulate; (ii) there was no economic effect of the regulation on the general public which it is to regulate; (iii) there was no estimated cost to the agency for enforcement of the regulation; (iv) the

regulation did not overlap or duplicate a federal regulation; (v) the regulation does not include provisions which are more stringent than a federal regulation which regulates the same activity; and (vi) the regulation does not establish a new fee or increase an existing fee.

60.     The affirmations made by Defendants Governor Sisolak and Luna in the March 20, 2020 Informational Statement are a gross misrepresentation of the stringent measures taken and are a direct violation of subsections (1)(g), (1)(h), (1)(i), and (1)(j) of NRS 233B.066.

61.     In their affirmations, Defendants Governor Sisolak and Luna deliberately, willfully, and with a conscious disregard for the truth, violated:  NRS 233B.066(1)(g) by refusing to provide the estimated economic effect of the regulation on the businesses and persons which it is regulating; NRS 233B.066(1)(h) by refusing to provide the estimated cost to the agency for enforcement of the regulation; NRS 233B.066(1)(i) by refusing to state the federal regulations which the regulation duplicates and the applicable federal agency; and NRS 233B.066(1)(j) by refusing to delineate the stringent measures that the State of Nevada incorporated, despite no federal mandate for the same.

62.     On March 20, 2020, Defendant Department of Public Safety, Division of Emergency Management arbitrarily and capriciously passed an Emergency Administrative Regulation amending Chapter 414 of the Nevada Administrative Code, adding a section entitled "Business During Times of Declared Emergency (NRS 414.060, 414.070) ", whereby Nevada businesses were classified as either an "Essential Licensed Business" or a "Non-Essential Business".

63.     Despite Emergency Directive 003 stating that the Nevada Attorney General opined in Opinion Number 9 5-03 "that, in the context of the Governor's exercise of powers

under NRS Chapter 414, municipalities exceed their statutory authority in adopting emergency powers that: …prohibit the sale or distribution of guns, ammunitions or explosives; or close businesses which sell guns, ammunition or explosives…" and despite its prohibition by NRS 414.155, the March 20, 2020 emergency regulation included firearm retailers as a "Non-Essential Business".

64.     Whereby in adopting the March 20, 2020 emergency regulation, Defendants Governor Sisolak and Luna blatantly and willfully violated NRS 414.155, Amendment II of the United States Constitution, and Article I § 11 of the Nevada Constitution.

65.     Whereby Defendant Ford took no action to prevent or prohibit Defendants Governor Sisolak, Luna, or Department of Public Safety, Division of Emergency Management from adopting the unlawful March 20, 2020 emergency regulation, Ford engaged in willful misconduct.

66.     On March 22, 2020, Defendant Governor Sisolak suspended certain provisions contained in Chapter 241 of the Nevada Revised Statute ("Open Meeting Law") until April 16, and specifically, suspending requirements pertaining to public meetings and posting notices at physical locations ("Emergency Directive 006").

67.     Defendants actions lacked any empirical date for which they were based upon. The designation of essential vs non-essential business was based on the services the business rendered, not business capacity, public health or empirical data.

68.     Consequently, many essential business including but not limited to box stores such as grocery stores, Costco, Sam's Club, Target, Home Dept, Lowes, and Walmarts were servicing an overwhelming number of patrons, regardless of social distancing guidelines, demonstrating that the Executive Directives were arbitrary capricious and unsubstantiated by any empirical date in support thereof.

### *Chloroquine and Hydroxychloroquine*

69.     On March 23, 2020, based upon the recommendation provided by the

Defendant Governor's COVID-19 Medical Advisory Team, and specifically Defendants

Asad and Azzam, Defendant Wuest and Defendant State Board of Pharmacy ("BOP")

sought and received endorsement by Defendant Governor Sisolak for its own statement of

emergency, by letter of the same date, in order to adopt emergency regulations restricting

the "prescribing and dispensing" of chloroquine and hydroxychloroquine for patients

outside of a hospital setting.  Specifically, Defendants Wuest and BOP cited "the hoarding

and stockpiling" of these drugs during the COVID-19 pandemic, and the "resulting shortage

of supplies of these drugs for legitimate medical purposes" as the basis for its statement of

emergency.  Defendants Wuest and BOP further claimed that hydroxychloroquine is under

investigation for use in the treatment of COVID-19, but that its safety and efficacy have not

been established.  However, Defendants Wuest and BOP failed to provide any evidence, let

alone sufficient evidence, in support of these claims, or its reasons for the existence of an

emergency necessitating or justifying the unlawful emergency action taken.

70.     On March 23, 2020, that same day, and without providing supporting evidence

sufficient to reasonably determine the existence of an emergency, and having failed to

provide even minimally effective public notice, Defendants Wuest and BOP held an

emergency meeting to hear the "Discussion and Possible Action on Adoption of Emergency

Regulations pursuant to NRS 233B.0613 to Restrict the Prescribing and Dispensing of

Chloroquine of Hydroxychloroquine in Response to Covid-19 (**FOR POSSIBLE**

**ACTION**)(the "Agenda"); *see also* NRS 241.015; NRS 241.020.

71.     The Agenda stated that a public notice of the emergency meeting was given the

same day as the meeting.  However, any such notice failed to meet the minimum

20

requirements set forth in NRS 241.020 and 233B.0614, as even Members of Defendant BOP were only provided notification of the meeting via email at 2:59 p.m., with the meeting held by teleconference at 3:30 p.m.  In this, Defendants Wuest and BOP did not take comments from the general public as required under NRS 241.020.  *See* NRS 241.020 (stating that, "[n]o action may be taken upon a matter raised under this item of the agenda until the matter itself has been specifically included on a future agenda as an item…").

72.     As stated in its Agenda, Defendants Wuest and BOP declared that "[i]n regulating the practice of pharmacy, the Nevada State Board of Pharmacy has a duty to carry out and enforce the provisions of Nevada law to protect the health, safety and welfare of the public."

73.     On March 23, 2020, citing NRS 639.070 as its statutory authority, Defendant Governor Sisolak, in joint action with Defendant BOP, adopted an Emergency Administrative Regulation amending Chapter 639 of the Nevada Annotated Code, restricting the prescribing and dispensing of chloroquine and hydroxychloroquine for a COVID-19 diagnosis outside of a hospital setting, for a period of 180 days – 60 days longer than allowed by statute.  *See* NRS 233B.0613.

74.     Further, NRS 233B.066(2) mandates that each adopted regulation be accompanied by: (i) a clear and concise explanation of the need a for the adopted regulation; (ii) the estimated economic effect of the regulation on the business which it is to regulate and on the public, which shall be stated separately, and in each case must include: (1) both adverse and beneficial effects; and (2) both immediate and long term effects; (iii) the estimated cost to the agency for enforcement of the proposed regulation; (iv) a description of any regulations of other state or government agencies which the proposed regulation overlaps or duplicates, a statement explaining why the duplication or overlapping is

21

necessary, and if the regulation duplicates or overlaps a federal regulation, the name of the

regulating federal agency; (v) if the regulation includes provisions which are more stringent

than a federal regulation which regulates the same activity, a summary of such provisions;

and (vi) if the regulation provides a new fee or increases an existing fee, the total annual

amount the agency expects to collect and the manner in which the money will be used. *See*

NRS 233B.066.

75.     Both Defendants Governor Sisolak and Wuest endorsed the March 23, 2020

emergency regulation amending Chapter 639 of the Nevada Annotated Code, and in the

accompanying Informational Statement as required by NRS 233B.066(2), affirmed that: (i)

there would be no adverse or beneficial economic impact from the regulation on either the

providers of pharmaceutical care that are subject to the regulation, or the public; (ii) there

would be no immediate or long term economic effect on either the providers of

pharmaceutical care that will be subject to the regulation, or the public, or that any such

effects will be negligible; (iii) there would be no additional or special costs incurred by the

Board for the enforcement of the regulation; (iv) they are not aware of any similar

regulations or other state or government agencies that the proposed regulation overlaps or

duplicates; (v) they are not aware of any similar regulations of the same activity in which

the federal regulation is more stringent; and (vi) the regulation does not provide a new or

increase of fees.

76.     The affirmations made by Defendants Governor Sisolak and Wuest in the

March 23, 2020 Informational Statement are a gross misrepresentation of the stringent

measures taken and are a direct violation of subsections (1)(g), (1)(h), (1)(i), and (1)(j) of

NRS 233B.066.

77.     In their affirmations, Defendants Sisolak and Wuest deliberately, willfully, and with a conscious disregard for the truth, violated:  NRS 233B.066(1)(g) by claiming that there is no estimated economic effect of the regulation on the businesses and persons which it is regulating; NRS 233B.066(1)(h) by claiming that there is no cost to the agency for enforcement of the regulation; NRS 233B.066(1)(i) by claiming that there are no federal regulations which the regulation duplicates and no applicable federal agency; and NRS 233B.066(1)(j) by claiming that there are no similar regulations of the same activity in which the federal regulation is more stringent.

78.     On March 23, 2020, Defendants Governor Sisolak and BOP arbitrarily and capriciously passed an Emergency Administrative Regulation amending Chapter 639 of the Nevada Administrative Code, adding a section prohibiting the issuance, filling, or dispensing of a prescription for chloroquine or hydroxychloroquine to an outpatient for a COVID-19 diagnosis, or for any new diagnosis made after the effective date of the regulation.

79.     Despite Defendant BOP exceeding its authority (see NRS 639.070); despite Defendant BOP impermissibly practicing medicine (see NRS 630.020); despite Defendants Governor Sisolak and BOP interfering with the authority and privilege of a physician to practice medicine, and illegitimately restricting where the practice of medicine can occur (see, e.g., NRS 630.160; NRS 630.049); despite Defendants Governor Sisolak and BOP interfering with a person's right to receive approved treatment for a communicable disease from a physician of his or her choice, which is specifically prohibited by statute (see NRS 441A.200); despite the March 23, 2020 emergency regulation being preempted by Federal law; despite the emergency regulation violating a physician and patient's constitutional right to privacy and specifically, the right of an individual to protect his or her health by making

23

autonomous decisions about medical treatment with a physician of his or her choice, with no justification provided that would warrant such an intrusion (see Roe v. Wade (1973) and Amendment XIV, Section 1, of the U.S. Constitution); despite the March 23, 2020 emergency regulation violating a physician and patient's constitutional right to equal protection under Amendment XIV, Section 1, of the U.S. Constitution; despite the March 23, 2020 emergency regulation violating a physician and patient's constitutional right to due process under Article I, Section 8, of the Nevada Constitution, and Amendment V, Section 1, and Amendment XIV, Section 1, of the U.S. Constitution; despite the March 23, 2020 emergency regulation's invalidity under NRS 233B.0617; and despite the March 23, 2020 emergency regulation being void under NRS 241.036, Defendants Governor Sisolak and BOP adopted the March 23, 2020 emergency regulation.

80.     Whereby in adopting the March 23, 2020 emergency regulation, Defendants Governor Sisolak, BOP and Wuest blatantly and willfully violated, *inter alia*, NRS 639.070, 630.049, 630.160, 441A.200, 233B.060, 233B.0613, 233B.0658, 241.020, 29 CFR Section 541.304, 21 U.S.C. et all, 21 U.S.C. § 360bbb-3, *Roe v. Wade* (1973)*,* Article I, Section 8 of the Nevada Constitution, Amendment XIV, Section 1, Amendment V, Section 1, and Amendment XIV, Section 1, of the U.S. Constitution.

### **_Right to Travel and Places of Worship_**

81.     On March 24, 2020, Defendant Governor Sisolak directed all Nevadans to implement physical distancing measures to minimize spread of COVID -19, while prohibiting persons from gathering in groups of ten or more in any indoor or outdoor area until April 16 ("Emergency Directive 007").  Further, Emergency Directive 007 also ordered local governments to limit the general public's use of recreational equipment and

public spaces such as parks and beaches, and authorized local agents to enforce criminal penalties on any person who does not comply.

82.     Specifically, Defendant Governor Sisolak's Emergency Directive 007 stated:

a.     The Nevada general public shall not gather in groups of ten or more in any indoor or outdoor area, whether publicly owned or privately owned where the public has access by right or invitation, express or implied, whether by payment of money or not, including without limitation, parks, basketball courts, volleyball courts, baseball fields, football fields, rivers, lakes, beaches, streets, convention centers, libraries, parking lots, and private clubs. This provision shall not be construed to apply to the gathering of persons living within the same household, or persons working at or patronizing Essential Licensed Businesses or providing essential services to the public;

b.     With the exception of persons residing in the same household, the Nevada general public shall, to the extent practicable, abide by social distancing practices by maintaining a minimum six-foot distance between persons in public spaces, whether privately or publicly owned; and

c.     Local governments shall limit the Nevada general public's use of recreational equipment, including without limitation, playground equipment, basketball courts, volleyball courts, baseball fields, beaches, or football fields, in a manner that causes the congregation of ten or more persons in a manner contrary to best COVID-19 disease mitigation social distancing practices.

83.     Emergency Directive 007 also threatened that any person who does not comply with its Section 1, after receiving notice from law enforcement, may be subject to criminal

prosecution and civil penalties under NRS 199.280, NRS 202.450, and another other applicable statutes, regulations, or ordinances.

84.     Emergency Directive 007 also instructed that all law enforcement agencies in the State of Nevada were authorized to enforce this Emergency Directive 007, and that the Office of the Attorney General is given concurrent jurisdiction to prosecute respective violations.

85.     On March 29, 2020, POTUS recommended the continuation of limitations on gatherings through April 30, 2020.

86.     On March 31, 2020, Defendant Governor Sisolak issued yet another directive ("Emergency Directive 010"), extending the Declaration of Emergency to April 30, 2020, and thereby all Emergency Directives promulgated pursuant to.  Specifically, with limited exception, Defendant Governor Sisolak ordered all Nevadans to stay in their residences, and prohibited individuals from gathering outside of their homes, save authorized outdoor activity, so long as the activity complies with Emergency Directive 007.

87.     On April 1, 2020, Defendant Governor Sisolak authorized the Adjunct General to order into active duty such Nevada National Guard personnel "as he deems necessary to assist the state's response to the COVID-19 pandemic…" and until "such time as the Adjunct General determines the need for assistance no longer exists…" ("Emergency Directive 012").

88.     On April 8, 2020, Defendant Governor Sisolak continued the following closures, until April 30 ("Emergency Directive 013"):

    a.     Publicly accessible sporting and recreational venues that encourage social congregation, including without limitation, golf courses, golf driving ranges, tennis courts, basketball courts, volleyball courts, skate parks, bocce ball courts,

handball courts, horseshoe pits, or pickleball courts, shall remain closed for the duration that this Directive is in effect; and

   b.   Places of worship shall not hold in-person worship services where ten or more persons may gather, including without limitation, drive-in and pop-up services, for the remainder of the Declaration of Emergency.

89.   Further, on April 29, 2020, Defendant Governor Sisolak authorized "Non-Essential" retail businesses identified in Emergency Directive 003 to resume retail sales on a curbside or home delivery basis only, while extending Emergency Directives 003, 006, 007, and 010, respectively, until May 15.  As part of this Emergency Directive, Defendant Governor Sisolak advised Nevadans to continue to shelter in place, avoid interpersonal contact with persons not residing in their household, and to utilize face coverings in public spaces.

90.   While "Essential Businesses" continue to operate, and indeed, turn a profit (if not historical profits) during this time of crisis, Plaintiffs' "Non-Essential Businesses" have suffered immeasurably at the hands of government overreach and unconstitutionally restrictive Orders and Emergency Directives passed and enforced by Defendants, with immense disparate impact across every segment or sector of business in Nevada.

91.   Further, such disparate impact and "scare tactics" are furthered by the Government's unlawful restriction of chloroquine and/or hydroxychloroquine, both FDA-approved drugs authorized for use in the treatment of COVID-19, and their unwillingness to allow or provide viable treatment options.

92.   The arbitrary and capricious quarantine of all Counties in the State of Nevada, failing to quarantine Covid-19 positive only individuals and instead quarantining all individuals regardless of whether they were positive or not, or whether the Counties had

incidents of Covid-19 was arbitrary and unsupported by any empirical data to substantiate such actions.

93.    It is significant to note that as of the day of this Amended Complaint, Nye County, Lyon County, Douglas County, Lander County and Mineral County have had no deaths due to Covid-19; Humboldt and Elko County had 3 deaths cumulatively, and the only both Washoe and Clark County combined had under 300 deaths since the beginning of the alleged pandemic.

94.    Accordingly, Plaintiffs' complaint against Defendants, and each of them, for violation of the Federal Civil Rights Act, 42 U.S.C § 1983, to declare and enjoin the enforcement of the following Orders and Emergency Directives:

a.    Defendant Governor Sisolak's Emergency Directive 003, and Defendant Division of Emergency Management's corresponding designation of "Essential Licensed Business" and "Non-Essential Business" as delineated in the March 20, 2020 emergency regulation's amendment of Chapter 414 of the Nevada Administrative Code;

b.    Defendant Governor Sisolak's Emergency Directive 003 violating the Second Amendment rights of Nevada Citizens and NRS 414.155;

c.    Defendants Governor Sisolak and BOP's March 23, 2020 emergency regulation amending Chapter 639 of the Nevada Administrative Code, prohibiting the prescribing and dispensing of chloroquine and hydroxychloroquine for an outpatient with a COVID-19 diagnosis;

d.    Defendant Governor Sisolak's Emergency Directive 007, prohibiting Nevadans from gathering in groups of more than 10 people;

e.      Defendant Governor Sisolak's Emergency Directive 010 and "Stay At Home" Order issued on March 31, 2020; and

f.      Defendant Governor Sisolak's Emergency Directive 013 issued on April 8, 2020, prohibiting places of worship from holding in-person worship services where ten or more persons may gather.

95.     Plaintiffs have standing to bring § 1983 claims since they are aggrieved in fact, as businesses that are the subject of enforcement of the overbroad and unconstitutional Orders and Emergency Directives which have the effect of forcing Plaintiffs – which are a collection of Nevada businesses and individuals – to bear a public burden by entirely eviscerating Plaintiffs' ability to operate their respective businesses and restricting their right to receive treatment for a communicable disease.

96.     Plaintiffs have standing to bring § 1983 claims since they are aggrieved in fact, as businesses whose rights have been violated pursuant to Article 1, Section 8, Clause 3 of the U.S. Constitution, which prohibits states from passing legislation that discriminates against or excessively burdens interstate commerce.

97.     Plaintiffs further have standing to bring § 1983 claims since they are aggrieved individuals and Parties that are the subject of enforcement of the overbroad Orders and Emergency Directives infringing on their Free Exercise Clause of the First Amendment to the United States Constitution.

98.     Defendants' Orders and Emergency Directives are in violation of 42 U.S.C. § 1983, as is the enforcement of these Orders and Emergency Directives by Defendants, and should be enjoined under § 1983, due to the following circumstances:

a.      The Orders and Emergency Directives plainly violate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments in that they

unconstitutionally and disparately apply one set of rules to businesses arbitrarily deemed "Essential Businesses" versus all other businesses (such as Plaintiffs') that are deemed "Non-Essential Businesses", which must close pursuant to the Orders and Emergency Directives.  Plaintiffs aver that ALL businesses in the State of Nevada are "Essential" to the health, welfare, and well-being of its citizens, and that the general health outcome sought through the passage of these Orders and Emergency Directives (i.e., lowering the curve of COVID-19) could be accomplished through less restrictive means.

        b.      The Orders and Emergency Directives effectively amount to an impermissible "partial" or "complete" taking in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution in that the prohibition of Plaintiffs' operation of their "Non-Essential Business" constitutes a regulatory taking of private property, for public purpose, without providing just compensation therefore.  Furthermore, the Orders and Emergency Directives violate the Takings Clause of the Fifth Amendment in that the complete prohibition of the business operations of "Non-Essential Businesses" constitutes an irrational, arbitrary, and capricious law bearing no rational basis to any valid government interest.  The notion that the government-ordered shutdown of "Non-Essential Businesses" (such as Plaintiffs') is absolutely necessary in curbing the spread of COVID-19 constitutes an unconstitutional infringement on Plaintiffs' civil rights and liberties to operate in a free-market economy.  As national and statewide data has recently suggested, the economic impact of the mandatory, unconstitutional closures of "Non-Essential Businesses" has had an unnecessarily devastating and unprecedented crippling effect on local and state economies. ALL businesses are

'essential' and necessary to the maintenance of the health, welfare and prosperity of Nevada's citizens.

c.      The Orders and Emergency Directives further violate the substantive and procedural due process clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution.

d.      The Orders and Emergency Directives further violate Article 1, Sections 1, 4, 9, 10, 11 of the Nevada Constitution.

e.      The Orders and Emergency Directives violate Plaintiff's Second Amendment right to the United States Constitution and NRS 414.155.

f.      The Orders and Emergency Directives violate Plaintiffs rights as to conduct business under Article 1, Section 8, Clause 3 of the U.S. Constitution.

g.      The Orders and Emergency Directives violate Plaintiffs' rights to the Free Exercise of Religion and are not "narrowly tailored" to further any compelling governmental interest.  Defendants have granted numerous special exemptions to their bans on public gatherings and conduct, including for purportedly "Essential Businesses" and activities, provided that social distancing practices are observed.  Since these gatherings may be permitted, there can be no doubt that Defendants may, and therefore must, permit Plaintiffs to engage in equivalent business and religious activities provided that Plaintiffs also adhere to the social distancing guidelines currently in place.

h.      The Orders and Emergency Directives are preempted by Federal law and impermissibly restrict the issuance, filing, and dispensing of FDA-approved drugs issued pursuant to a valid prescription.

31

i.      The Orders and Emergency Directives violate Plaintiffs' and their

patients' constitutional rights to privacy – the right of individuals to protect their

health by making autonomous decisions about medical treatment with a physician

of their choice – which is a fundamental right that cannot be abridged or dictated

by Defendants and where no justification was provided that would warrant such an

intrusion, not even a declaration by the Defendant Governor Sisolak of a state of

emergency.

j.      The Orders and Emergency Directives violate Plaintiffs' and their

patients' constitutional rights to equal protection under Amendment XIV, Section

1, of the U.S. Constitution – particularly because the March 23, 2020 emergency

regulation (and its subsequent April 20, 2020 waiver) authorize hospital physicians

to issue, fill, and dispense these drugs to patients testing positive for COVID-19,

while simultaneously prohibiting non-hospital physicians from doing so.

k.      The Orders and Emergency Directives violate Plaintiffs' and their

patients' constitutional rights to due process under Article I, Section 8, of the

Nevada Constitution, and Amendment V, Section 1, and Amendment XIV, Section

1, of the U.S. Constitution – specifically in restricting the practice of medicine

under a valid medical license without due process.

99.      Unless and until injunctive relief is granted, Plaintiffs will continue to suffer

irreparable harm for which they are left without an adequate remedy at law, in that they are

subject to criminal cases (i.e., misdemeanor citations and fines) based on the enforcement of

the Orders and Emergency Directives by law enforcement agencies and their agents.

*__LEAP Team__*

100.     Defendant Governor Sisolak appointed a Local Empowerment Advisory Panel ("LEAP") on April 30, 2020, to serve as a resource for Nevada Counties as they work through the necessary requirements to reopen, and to share best practices and guidelines. Defendant Kirkpatrick appointed was appointed to represent the Urban Counties, while Defendant Goicochea was appointed to represent the Rural Communities.

101.     As of their date of appointment, Defendants Kirkpatrick and Goicochea have failed to communicate any plans of reopening, operations, etc. with Nevadans.

102.     On April 14, 2020, Defendant Department of Health and Human Services halted two Las Vegas operations providing rapid tests for COVID-19; to wit, Sahara Urgent Care and Cura Telehealth & Wellness, following specific instructions from State Regulators to cease operations.

103.     Despite a downward reduction in COVID-19 morbidity, Defendant Governor Sisolak, on April 21, 2020, stated that Nevada was not ready to advance to Phase I of reopening.  Defendant Governor Sisolak's actions were unsupported by substantial evidence, grossly negligent, arbitrary and capricious, and with a wanton disregard for the people of the State of Nevada.

## EQUITABLE ALLEGATIONS

104.     In violation of State and Federal Constitutional and Statutory provisions, Defendants, and their agents and employees, including Defendants DOES 1 to 100, have, and unless enjoined, will continue to subject the Plaintiff class to constitutional violations and injury that will cause Plaintiffs and the other class members harm, and Plaintiffs will be fearful of exercising their right to peacefully pray, assemble, engage in business, and to be treated for COVID-19.

**CLAIMS FOR RELIEF**

**I.**
**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE FIFTH AMENDMENT**
**Right to travel as enforced by 42 § 1983**
(*Against All Defendants*)

105.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

106.    While not explicitly defined in the U.S. Constitution, the Supreme Court has "acknowledged that certain unarticulated rights are implicit in enumerated guarantees…. Yet these important but unarticulated rights [association, privacy, presumed innocent, etc.] have nonetheless been found to share constitutional protection in common with explicit guarantees." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-580 (1980).

107.    "The right to travel is a part of the liberty of which the citizens cannot be deprived without the due process of law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 127 (1958).

108.    Courts have found that "[f]reedom of movement is kin to the right of assembly and to the right of association.  These rights may not be abridged.  *Aptheker v. Secretary of State*, 378 U.S. 500, 520 (1964).

109.    The United States Supreme Court has found that this right to travel includes in state, intrastate, or foreign travel.  *See, e.g., Kent v. Dulles*, 357 U.S. at 126 ("Freedom of movement across frontiers in either direction, and inside frontiers as well, was a part of our heritage.").

110.    The right to travel is fundamental because "[f]reedom of movement, at home and abroad, is important for job and business opportunities – for cultural, political, and

34

social activities – for all the commingling which gregarious man enjoys." *Aptheker*, 378 U.S. at 519-520 (1964).  *See also Kent*, 357 U.S. at 126 (where "[t]ravel abroad, like travel within the country, may be necessary for a livelihood.  It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads.  Freedom of movement is basic in our scheme of values.").

111.    Even though we are in a state of emergency, and people may abuse the right to travel, citizens do not lose their constitutional rights.  *See Aptheker*, 378 U.S. at 520 ("Those with the right of free movement use it at times for mischievous purposes.  But that is true of many liberties we enjoy.  We nevertheless place our faith in them, and against restraint, knowing that the risk of abusing liberty so as to give rise to punishable conduct is part of the price we pay for this free society.").

112.    When a government practice restricts fundamental rights like the right to travel, it is subject to "strict scrutiny" and can be justified only if it furthers a compelling governmental purpose, and even then, only if no less restrictive alternative is available.  *See, e.g., Memorial Hospital v. Maricopa County*, 415 U.S. 250, 257-258 (1974); *Dunn v. Blumstein*, 405 U.S. 330, 339-341 (1972); *Shapiro v. Thompson*, 394 U.S. 618, 89 (1969), *Maher v. Roe*, 432 U.S. 464, 488 (1977).

113.    Defendant Sisolak's Emergency Directives  mandate that Plaintiffs stay at home and shut down their "Non-Essential Businesses".

114.    Requiring Plaintiffs to abstain from conducting business operations, even those in compliance with the CDC's social distancing guidelines, violates Plaintiffs' Constitutional right to travel.

115.    Unless enjoined, Defendants will act under color of law to deprive Plaintiffs of their right to travel as protected by the Due Process Clause.

116.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

117.     Pursuant to 42 U.S. C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

118.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S. C. § 1988.

## II.
## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT
### (*Against All Defendants*)

119.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

120.     Plaintiffs have a fundamental property interest in conducting lawful business activities that are protected by the Due Process Clause of the Fourteenth Amendment.

121.     The Orders and Emergency Directives, and Defendants' enforcement thereof, violate Plaintiffs' substantive due process rights secured by the Fourteenth Amendment to the U.S. Constitution.  Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights.  *See Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968).  In addition, these liberties extend to certain personal choices central to individual dignity and autonomy,

including intimate choices that define personal identity and beliefs.  *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484-486 (1965).

122.    Defendants', which expressly deprive Plaintiffs of their rights and liberties by prohibiting the lawful operation of their businesses by ordering the closure of "Non-Essential Businesses", did not afford Plaintiffs with a constitutionally adequate hearing with which to present their case for their businesses to not be shut down.  At a minimum, Plaintiffs aver that they should have been able to decide for themselves whether or not to "shut down", if their businesses / business models were not properly equipped to deal with the health and safety guidelines as issued by the Federal and State Governments in connection with the COVID-19 crisis.

123.    Similarly, Defendants', which expressly deprive Plaintiffs of their rights and liberties by restricting a physician's right to practice medicine and a patient's right to receive treatment for a communicable disease by prohibiting the lawful prescription of an FDA-approved drug, did not afford Plaintiffs with a constitutionally adequate hearing with which to present their case for their right to practice medicine and the right to receive treatment during a global pandemic.  Especially as NRS 441A.200 mandates these rights, and specifically prohibits such interference by any person or public body.  Plaintiffs aver that they should have been able to decide for themselves, as authorized under Federal and State law, whether or not to prescribe an FDA-approved drug for use in the treatment of COVID-19.

124.    Defendants failed to comply with the procedural and substantive requirements of the U.S. Constitution in connection with Plaintiffs' rights and liberties as they relate to their respective properties / businesses / medical licenses / treatment, which would have given Plaintiffs a meaningful opportunity to respond to the proposed Orders and Emergency

Directives, and to explain how and why they were so deeply flawed and unconstitutional as applied to Plaintiffs.

125.    Because Defendants' decisions in issuing the Emergency Directives were made in reliance on procedurally deficient and substantively lawful processes, Plaintiffs were directly and proximately deprived of their property and liberties, and consequently, their ability to lawfully operate their businesses, their ability to practice medicine pursuant to a validly issued license, and to provide and receive treatment for a communicable disease, without unconstitutional government overreach.

126.    Because Defendants' decisions were made in reliance upon an arbitrary and capricious interpretation of the Nevada Constitution and related laws and statutes with respect to their ability to order the state-wide "closure" of all "Non-Essential Businesses", and the prohibition of the prescription and issuance of FDA-approved drug for outpatients with COVID-19, Plaintiffs were directly and proximately deprived of their property rights and liberties absent substantive due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

127.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

128.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

129.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### III.
### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
### (*Against All Defendants*)

130.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

131.    At its core, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution functions as a constitutional guarantee that no person or group will be denied the protection under the law that is enjoyed by similar persons or groups.  In other words, persons similarly situated must be similarly treated.  Equal protection is extended when the rules of law are applied equally in all like cases and when persons are exempt from obligations greater than those imposed upon others in like circumstances.

132.    The Orders and Emergency Directives, and Defendants' enforcement thereof, violate the Fourteenth Amendment, both facially and as-applied to Plaintiffs.  The Fourteenth Amendment of the Constitution provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Equal protection requires the State to govern impartially—not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objection.

133.    Defendants have intentionally and arbitrarily categorized Nevada businesses and conduct as either "Essential" or "Non-Essential."  Those businesses classified as "Essential," or as participating in "Essential Services", are permitted to go about their business and activities provided certain social distancing practices are employed.  Those classified as "Non-Essential," or as engaging in "Non-essential" activities, are required to

shut down and have their workers stay in their residences, unless it becomes absolutely necessary for them to leave for one of the enumerated "Essential" activities.

134.    Strict scrutiny under the Equal Protection Clause applies where, as here, the classification impinges on a fundamental right – the right to free exercise, including the right to due process and the right to travel (both interstate and intrastate), the right to privacy, the right to practice medicine, and the right to receive treatment, among others.

135.    Defendants cannot satisfy strict scrutiny because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

136.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

137.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

138.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**IV.**
**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT**
***(Against All Defendants)***

139.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

140.     The United States Supreme Court has long held that "the Fifth Amendment…was designed to bar Government from forcing people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *See Armstrong v. United States (1960) 364 U.S. 40, 49.*

141.     Defendants' Orders and Emergency Directives mandated that because Plaintiffs were "Non-Essential Businesses", they were required to "shut down" and cease all operations as a means to help curb the spread of COVID-19.  Such a mandate completely and unconstitutionally deprived Plaintiffs of all economically beneficial use of their businesses without just compensation.

142.     While the "police power" is inherent in a sovereign government and is reserved for the States in the Tenth Amendment to the U.S. Constitution, it is not without constitutional limits.  *See Euclid v. Ambler Realty Company, 272 U.S. 365 (1926)* (holding that local governments may protect the general welfare through the enactment of residential zoning ordinances).  However, a government's "police power" in this area is restricted by Constitutional considerations, including the Fifth Amendment's "Takings Clause", as well as Due Process and Equal Protection.

143.     Defendants' Orders and Emergency Directives, and Defendants' enforcement thereof, has caused both a complete and total regulatory and physical taking of Plaintiffs' property without just compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.  At a minimum, the effect of Defendants' Orders and Emergency Directives constitutes a "partial" taking under the Penn- Central three-factor test.  *See Penn Central Trans. Co. v. City of New York , 438 U.S. 104, 124 (1978).*  As a result, Defendants' blatant violation of the Takings Clause of the Fifth Amendment has caused proximate and legal harm to Plaintiffs.

144.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

145.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Orders and Emergency Directives.

146.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## V.
## FIFTH CLAIM FOR RELIEF
## VIOLATION OF THE NEVADA CONSTITUTION
## ARTICLE I DECLARATION OF RIGHTS
### *(Against All Defendants)*

147.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

148.    Since 1864, the Nevada Constitution has provided intrinsic and unalienable rights and liberties to its citizens.  Chief among those rights and liberties are those found in Article I of the Nevada Constitution.  Article I, Section 1, of the Nevada Constitution provides, in pertinent part, that "[a]ll men are by Nature free and equal and have certain inalienable rights among which are those of enjoying and defending life and liberty; Acquiring, Possessing and Protecting property and pursuing and obtaining safety and happiness…"

149.    Similarly, Article I, Section 8, provides that no person shall be deprived of life, liberty, or property, without due process of law.

42

150.    Defendants' Orders and Emergency Directives have not only interfered with Plaintiffs' rights and liberties as set forth under Article I, Sections 1, 4, 8, 10, and 11 of the Nevada Constitution, but have further deprived them of the use, enjoyment and ability to operate their respective businesses on account of a discriminatory classification as "Non-Essential Businesses".

151.    Defendants' Orders and Emergency Directives have proximately and legally caused tremendous financial harm not just to Plaintiffs' businesses, but to the entire Nevada economy, which will continue to have deleterious effects unless and until Defendants are enjoined by this Court from enforcing their respective Orders and Emergency Directives.

152.    Requiring Plaintiffs to abstain from conducting lawful business in the State of Nevada, despite other compliance measures being taken to satisfy the public health interests at stake, violates their Nevada Constitutional liberty rights.

153.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

154.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are entitled to an award of attorneys' fees thereon.

**VI.**
**SIXTH CLAIM OF RELIEF**
**VIOLATION OF NEVADA CONSTITUTION**
**Right to Liberty (Nev. Const. Art. 1, § 4)**
**(*Against All Defendants*)**

155.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

156.    Article 1, Section 4, of the Nevada Constitution provides, in pertinent part, that "[t]he free exercise and enjoyment of religious profession and worship without discrimination or preference shall forever be allowed in this State…"

157.    Nevada Courts have routinely held that the Nevada Constitution mirrors the Free Exercise Clause in the First Amendment.  Emergency Directive 013, passed April 8, 2020, which precludes attendance at places of worship, lacks a compelling state interest as to such religiously-motivated Orders and Emergency Directives.

158.    Requiring places of worship to limit the number of parishioners physically present violates the Free Exercise Clause of the Nevada and United States Constitutions, and whereby Emergency Directive 013 specifically precludes the Free Exercise of Religion in Nevada.

159.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

160.    Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are entitled to an award of attorneys' fees thereon.

**VII.**
**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF THE NEVADA CONSTITUTION**
**Right to Liberty (Nev. Const. Art. 1, § 8)**
**(*Against All Defendants*)**

161.    Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

162.     Article 1, Section 8, of the Nevada Constitution provides, in pertinent part, that "[n]o person shall be deprived of life, liberty, or property, without due process of law.  Private property shall not be taken for public use without just compensation having been first made, or secured, except in cases of war, riot, fire, or great public peril, in which case compensation shall be afterward made…"

163.     Moreover, the principle behind the concept of just compensation for property taken for public use is to put the owner in as good a position pecuniary as he or she would have occupied if his or her property had not been taken.

164.     Finally, the Constitutional guarantee of just compensation for property taken by the Government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking.

165.     Requiring Plaintiffs to abstain from conducting lawful business in the State of Nevada, despite other compliance measures being taken to satisfy the public health interests at stake, violates their Nevada Constitutional liberty rights.

166.   Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their Constitutional rights unless Defendants are enjoined from implementing and enforcing the Orders and Emergency Directives.

167.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefor entitled to an award of attorneys' fees and costs thereon.

# VIII.
## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF NRS 414.155
### (*Against All Defendants*)

168.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

169.     NRS 414.155, entitled "*Limitations on emergency powers relating to firearms*", provides in pertinent part, that:

> "Pursuant to Amendment II of the Constitution of the United States, and Section 11 of Article 1 of the Constitution of the State of Nevada, and notwithstanding any other provision of law, the emergency powers conferred upon the Governor and upon the executive heads or governing bodies of the political subdivisions of this State must not be construed to allow:
>
> 1.  The confiscation of a firearm from a person unless the person is:
>
> (a)  In unlawful possession of the firearm; or
>
> (b)  Unlawfully carrying the firearm; or
>
> 2.  The imposition of additional restrictions as to the lawful possession, transfer, sale, carrying, storage, display or use of:
>
> (a)  Firearms;
>
> (b)  Ammunition; or
>
> (c)  Components of firearms or ammunition…"

170.     Defendant's March 20, 2020 Emergency Directive 003 labeling firearm stores "Non-Essential Businesses" violates NRS 414.155, and Amendment II of the U.S. Constitution and Article I, Section 11, of the Nevada Constitution.

171.     Defendants engaged in an act or omission respecting legal duty of an aggravated character, or with willful, wanton misconduct.

172.     Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees and costs thereon.

## IX.
## NINTH CLAIM FOR RELIEF
## GROSS NEGLIGENCE
### (All Defendants)

173.     Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

174.     Defendants owed a duty of care to Plaintiffs and class as leaders of this State with Nevadan lives reliant on their decisions.  Specifically, Defendants Azzam and Asad are responsible for investigating all known infectious and communicable diseases and shall order a medical examination or test for each person whom is believed to have such disease, in order to verify its presence.  *See* NRS 441A.160.  Further, persons with an infectious and communicable disease are subject to a misdemeanor if they conduct themselves in a manner likely to expose others to the disease.  *See* NRS 441A.180.

175.     Defendants were grossly negligent in failing to provide the adequate investigation and testing for persons who were believed to have COVID-19, and in taking actions necessary to prevent its further transmission.

176.     Further, any isolation or quarantine required of persons having such infectious and communicable disease must comply with the provisions of NRS 441A.510 to 441A.720, inclusive.  *See* NRS 441A.160.  Defendants were grossly negligent in failing to follow or even

47

cite any provisions as contained in Chapters 441A of the Nevada Revised Statutes or the Nevada Annotated Code.

177.     Further, when a health care provider or medical facility significantly contributes to a case of an infectious disease, Defendants Azzam and Asad are required by law to issue a written order directing said health care provider or medical facility to cease and desist any conduct which is harmful to the health, safety, and welfare of the public, and take any other action necessary to reduce such harm.  *See* NRS 441A.169.  Defendants were grossly negligent in failing to issue such a written order when hospitals actively turned away patients symptomatic of COVID-19 because their symptoms were "not yet severe enough".

178.     Further, no health authority or any other person is empowered or authorized to interfere in any manner with the right of a person to receive approved treatment for a communicable disease from any physician, clinic, or other person of his or her choice.  *See* NRS 441A.200.

179.     Defendants were, at a minimum, grossly negligent, if not acting in willful and wanton disregard, when adopting the March 23, 2020 emergency regulation amending Chapter 639 of the Nevada Annotated Code, thereby restricting access to chloroquine and hydroxychloroquine, both drugs approved by the FDA for use in the treatment of COVID-19, to people testing positive for COVID-19 outside of a hospital setting.

180.     Further, pursuant to NRS 441A.120, Defendants Azzam and Asad are required to follow the recommendations, guidelines, and publications of Federal Agencies for the control of infectious and communicable diseases.  *See* NRS 441A.120; NAC 441A.200. Defendants were grossly negligent in failing to follow the recommendations and guidelines as established in these publications.

181.     NRS 439.130 provides that if the Chief Medical Officer is not licensed to practice medicine in this State, and Defendant Azzam here is not, shall not, in carrying out the duties of Chief Medical Officer, engage in the practice of medicine.  Defendant Azzam was grossly negligent in his capacity as Chief Medical Officer when making decisions that constitute the practice of medicine during the COVID-19 pandemic, and specifically, *inter alia*, providing the State Board of Pharmacy with a recommendation to restrict the prescribing of an approved treatment to persons with a communicable disease, without being licensed to do so.

182.     Defendants, and specifically, Defendant Asad, had a duty to independently investigate the errant IHME and CDC information provided, and Defendants breached that duty when they failed to exercise even the slightest degree of care when they restricted a potential treatment for COVID-19, and when they failed to request Federal disaster relief for weeks after Defendant Governor Sisolak declared a state of emergency.

183.     Defendants engaged in an act or omission respecting legal duty of an aggravated character, or with willful, wanton misconduct.

184.     Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees and costs thereon.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiffs request that this Court:

(1)     Issue a declaratory judgment with the following:

(a)     Declaration that Defendant Governor Sisolak's Executive Order 2020-01, Emergency Directives 001, 002, 003, 006, 007, 010, 013, and 016, and their

corresponding emergency regulations dated March 20, 2020 and March 23, 2020 are null and void, of no effect, as:

        (i)      Unconstitutional under the Fifth Amendment;

        (ii)     Unconstitutional under the Fourteenth Amendment;

        (iii)    Arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or Nevada Constitutions;

        (iv)    Contrary to Constitutional right, power, privilege, or immunity in violation of the U.S. and/or Nevada Constitutions; and

        (v)     In excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or Nevada Constitutions;

    (b)     Declaration that Defendant's March 20, 2020 enumerated list of "Essential Businesses" versus "Non-Essential Businesses" following Defendant Governor Sisolak's Emergency Directives is null and void, of no effect, as:

        (i)      Unconstitutional under the Fifth Amendment;

        (ii)     Unconstitutional under the Fourteenth Amendment;

        (iii)    Arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or Nevada Constitutions;

        (iv)    Contrary to Constitutional right, power, privilege, or immunity in violation of the U.S. and/or Nevada Constitutions; and

        (v)     In excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or Nevada Constitutions;

    (c)     Declaration that Defendant Governor Sisolak's April 8, 2020 prohibition of gathering in places of worship is null and void, of no effect, as:

        (i)      Unconstitutional under the First Amendment;

(ii)      Unconstitutional under the Fourteenth Amendment;

(iii)      Arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the U.S. and/or Nevada Constitutions;

(iv)      Contrary to Constitutional right, power, privilege, or immunity in violation of the U.S. and/or Nevada Constitutions; and

(v)      In excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the U.S. and/or Nevada Constitutions;

(2)      Set aside and hold unlawful Defendants' Orders and Emergency Directives;

(3)      Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants, including law enforcement authorities and their agents, from enforcing the Orders and Emergency Directives;

(4)      Issue a TRO and a preliminary injunction preventing Defendants from enforcing or implementing the Orders and Emergency Directives until this Court decides the merits of this lawsuit;

(5)      Permanently enjoin Defendants and all persons and entities in active concert or participation with Defendants from enforcing the Orders and Emergency Directives unless they are issued in accordance with all procedural and substantive due process requirements of the U.S. Constitution;

(6)      Award Plaintiffs damages arising out of their § 1983 Claims, and specifically, under the Fifth Amendment to the U.S. Constitution, and Article 1, Section 8, of the Nevada Constitution's Takings Clause(s);

(7)      Award Plaintiffs the reasonable value of the loss of their businesses by virtue of Defendant Governor Sisolak's Orders and Emergency Directives;

(8)    For such other and further relief to which Plaintiffs may show themselves

justly entitled; and

(9)    For an award of reasonably attorneys' fees and his costs on his behalf

expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988.

## **AFFIRMATION**

The undersigned does hereby affirm that this document does not contain the social

security number of any person.

DATED this _12th___ day of May 2020.

**CHATTAH LAW GROUP**


/s/ *S. CHATTAH* _____
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
Attorney for Plaintiffs

**JOEY GILBERT LAW**


By: */s Joseph S. Gilbert* _____
    Joseph S. Gilbert, Esq.
    Roger O'Donnell, Esq
    *Attorneys for Plaintiffs/Petitioners*

52